# JOHN L. THORNDIKE

## V.

# EDMUND L. THORNDIKE, ADMINISTRATOR.

*Jurisdiction—Courts of Chancery—Injunction—Limitations.*

1. It is an essential condition of the jurisdiction of courts of chancery to restrain proceedings at law, that the party complained of is exercising an unfair advantage by his proceedings which must necessarily produce injustice, and that it is therefore against conscience that he should make use of such advantage.

2. Such jurisdiction may be extended so as to stay proceedings in another State or a foreign country, not by attempting to direct or control the foreign court, but by operating *in personam* upon the parties to the suit when they are resident within the territorial limits of the court whose power is invoked; and without regard to the situation of the subject-matter in dispute, chancery will consider the equities between the parties and decree *in personam* according to those equities.

3. Such jurisdiction will not be exercised unless to prevent an inequitable and an unconscionable result, likely to flow from the use of the advantage about to be obtained in the proceedings at law.

4. As a general rule, if one by the laws of a given State may inherit property, he holds it subject to the laws thereof with reference to the collection of debts.

5. Upon a bill filed, praying for an injunction to restrain the prosecution of an attachment suit begun in another State on certain notes, the same being barred by the statute of limitations of this State, this court holds, in view of the evidence, that the equities are against the decree in behalf of complainant, and reverses the same with directions to dismiss the bill.

[Opinion filed December 3, 1891.]

APPEAL from the Circuit Court of Morgan County; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. MORRISON & WHITLOCK, for appellant.

Mr. JOHN A. BELLATTI, for appellee.

WALL, P. J.   This was a bill in chancery exhibited by the conservator of James Thorndike, since deceased, against the

appellant, John Thorndike, alleging that said James and John, who were brothers, were citizens of Morgan County, Illinois; that said John was the holder of two promissory notes executed and delivered to him by said James, one in 1858 and the other in 1869; that no suit had ever been brought on said notes in this State, and that they were barred by the statute of limitations; that certain property situate in New Hampshire, having descended to said James by the death of Thomas Thorndike, also a brother, the said John had brought an action by attachment on said notes in the courts of New Hampshire, and had attached the property of said James there situate; that by the laws of said State, the defense of the statute of limitations could not be interposed because the parties were non-resident; and prayed for an injunction restraining the prosecution of the said suit in New Hampshire.

Appellant answered that the notes were for money loaned to and paid for the use of said James as his surety; that the latter had been insane the greater part of the time since 1869, and wholly unable to pay anything, and that a suit would have been unavailing; that when he was not in the insane hospital he and his family had been supported by appellant and another brother; that certain property having descended to him situate in New Hampshire, he was then able to pay the debt and admitted bringing suit by attachment in said State to compel such payment. Replication was filed and upon a hearing a decree was rendered according to the prayer of the bill.

The proofs were substantially in support of the bill and answer as to the indebtedness, the descent of property in New Hampshire, the bringing of suit there, the insanity of James and his insolvency up to the inheritance as stated; and it also appeared that during the period succeeding the making of the notes and preceding the inheritance, the appellant had contributed very materially to the support of the said James and his family.

The jurisdiction of chancery to restrain proceedings at law in certain cases is very well settled. It is not necessary now to state the circumstances under which such action may be taken, further than that it is an essential condition of such jurisdic-

Thorndike v. Thorndike.

tion that the party complained of is exercising an. unfair advantage by his proceedings at law, which must necessarily produce injustice, and that it is therefore against conscience that he should make use of such advantage.    Story's Eq. Jur. Sec. 885.

It is also settled that the jurisdiction may be extended so as to stay proceedings in another State or a foreign country, not by attempting to direct or control the foreign court, but by operating *in personam* upon the parties to the suit when they are resident within the territorial limits of the court whose power is invoked; and without regard to the situation of the subject-matter in dispute, chancery will consider the equities between the parties and decree *in personam* according to those equities.    Ibid. Sec. 899.    Here also it is fundamental to ascertain the equities of the parties, and it may be regarded as an unfailing rule that the jurisdiction will not be exercised unless to prevent an inequitable and an unconscionable result likely to flow from the use of the advantage about to be obtained in the proceedings at law.

The only question, therefore, in the present case, is as to the character, viewed from an equitable standpoint, of the action which this bill sought to restrain.    It is true that by the law of this state, had the attachment suit been brought here, the statute of limitations was a complete defense.

In the State of New Hampshire, where the property was, and by virtue of whose laws it descended to the said James, it was not a defense because the parties were not resident of that state.

The attachment suit was a proceeding *in rem*, and could only affect the enjoyment of the property descended by and under the provisions of the law of the state where the property was situate.    As a general proposition it seems to be perfectly just and reasonable that if, by the laws of a state, one may inherit property, he should hold it subject to the laws of that state in reference to the collection of debts.    He ought to take the benefit with all the conditions imposed by the statutory policy of the state under whose laws he is permitted to enjoy it.

It is not pretended that the debt in question was ever paid.

On the contrary it appears that no suit was instituted because of the debtor's utter inability to pay, and because it would have been fruitless, and further, that during the period intervening, the condition of said James was such that additional obligation was incurred for the support of himself and family.

While the statute of limitations will constitute a valid defense, yet the debt so barred is a sufficient consideration to support a new promise; and while a court of equity will, by analogy, apply the statute where its active aid is sought to enforce stale demands, yet it will always consider the circumstances of the delay in order to ascertain whether *laches* is really chargeable.

In view of the facts we are strongly inclined to hold that this is not a proper case for the relief granted.

It is not unlawful to prosecute the attachment suit in New Hampshire, nor can we see that it was in the least degree inequitable or unconscionable to do so when the proceedings could reach nothing beyond the property inherited there. If, by the law of that state, the property might be subjected to the payment of the debt, the debtor seeking to hold the property under the same law should not be heard to complain. He who seeks equity should be willing to do equity. This debt was really unpaid because of circumstances which compelled the incurring of further indebtedness of which no account had been kept and as to which no proceedings were had. All the equities of the situation seem to be against the decree here granted. We are of opinion it is erroneous and the same is therefore reversed with directions to dismiss the bill.

*Decree reversed with directions.*